**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>     *Plaintiff,*<br><br>  v.<br><br>DHLP – LIMERICK GOLF COMMUNITY, L.P., et al.,<br><br>     *Defendants.* | CIVIL ACTION<br>NO. 15-03291 |

**PAPPERT, J.**                    **February 10, 2017**

**MEMORANDUM**

The International Fidelity Insurance Company ("IFIC") sued DHLP – Limerick Golf Community ("DHLP"), Dewey Homes LP, Dewey Properties, Inc., John Dewey and Kenneth Dewey on June 11, 2015 for contractual indemnification, specific performance to inspect books and records, damages for breach of a contractual trust fund agreement and subrogation. (ECF No. 1.) The claims arose after DHLP defaulted on contracts to develop a golf course community for two local townships. IFIC had issued performance bonds on DHLP's behalf to ensure its performance of those contracts, and DHLP agreed to indemnify IFIC in the event the townships made any claims against those bonds.

The parties stipulated to Kenneth Dewey's dismissal on May 31, 2016, (ECF No. 26), and the Court entered a consent judgment against John Dewey on October 12, 2016, (ECF No. 31). The only remaining claims are for contractual indemnification against DHLP, Dewey Homes LP and Dewey Properties, Inc. (collectively "the Defendants"). IFIC requested a default on November 19, 2015 which the clerk of court entered the same day. *See* (ECF No. 17). On

1

December 2, 2016 IFIC moved for a default judgment against the Defendants.  (ECF No. 32.)

For the reasons that follow, the Court grants the motion.

**I.**

On October 1, 2001 Lower Pottsgrove Township approved subdivision and land

development plans for the Heritage Hills Golf Club.  (Compl. ¶ 14, ECF No. 1.)  On December

18, 2001 Limerick Township approved their own subdivision and land development plan for the

same development.  (*Id.* ¶ 15.)  The development project was to include a golf course, clubhouse

and 193-lot residential subdivision in both Limerick and Lower Pottsgrove Townships in

Pennsylvania.  (Compl. ¶¶ 14–15.)  Between October 2001 and October 2003, DHLP secured

from both townships the rights to develop the project.  (*Id.* ¶ 16.)  DHLP purchased the necessary

real property to develop the project in April 2003.  (*Id.*)

DHLP then entered into a series of agreements pursuant to its development of the

Heritage Hills Golf Club.  On October 24, 2003 DHLP entered into an indemnification

agreement with IFIC "in consideration for and in order to induce [IFIC], as surety, to issue

performance bonds on behalf of DHLP."  (*Id.* ¶ 9.)  Also on October 24, DHLP entered into a

"Subdivision Development and Maintenance Agreement" with Limerick Township.  (*Id.* ¶ 17.)

It entered an agreement of the same name with Lower Pottsgrove Township on October 29,

2003.  (*Id.* ¶ 18.)  IFIC subsequently issued two performance bonds at DHLP's request and

pursuant to its indemnification agreement with DHLP.  (*Id.* ¶ 19.)  The performance bond in

favor of Limerick Township was in the amount of $3,527,064.33, (*id.*), and the performance

bond in favor of Lower Pottsgrove Township was for $618,334.26, (*id.* ¶ 20).

In May 2011, Lower Pottsgrove declared DHLP in default of its Subdivision

Development and Maintenance Agreement.  (*Id.* ¶ 21.)  In May 2013 Limerick Township

followed suit, declaring DHLP in default of the Limerick Subdivision Development and Maintenance Agreement. (*Id.* ¶ 24.) On October 7, 2014 Limerick Township submitted a claim to IFIC against the performance bond issued in favor of the township. (*Id.* ¶ 27.)

IFIC seeks contractual indemnification pursuant to the indemnification agreement it signed with the Defendants. Because the Defendants have not appeared in this case, IFIC seeks entry of default judgment.

## II.

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal quotation marks omitted). The Court need not, however, accept the moving party's legal conclusions or allegations relating to the amount of damages. *Id.*; *see also DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2688, at 58–59, 63 (3d ed. 1998)). Consequently, before granting a default judgment the Court must determine whether a legitimate cause of action exists, as a party in default does not admit mere conclusions of law. *Asher*, 2006 WL 680533, at *1 (citing WRIGHT & MILLER, § 2688, at 63).

## A.

IFIC's complaint alleges the Defendants violated the terms of their indemnity agreement with IFIC.[1] To establish the right to contractual indemnification, a plaintiff must plead facts to establish:

---

[1]   "[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citations and internal quotation marks omitted). Fidelity has adequately pleaded both personal and subject-matter jurisdiction. *See* (Compl. ¶¶ 1–7).

> The scope of the indemnification agreement; the nature of the underlying claim; its coverage by the indemnification agreement; the reasonableness of the alleged expenses; and, where the underlying action is settled rather than resolved by payment of a judgment, the validity of the underlying claim and the reasonableness of the settlement.[2]

*McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. Ct. 1991).  A claim for contractual indemnification is ripe only after expenses associated with the indemnification agreement are actually paid.  *Id.* at 23.

IFIC has stated a valid cause of action for contractual indemnification.  IFIC's complaint explains that the indemnification agreement plainly covers the issue in this case.  The agreement states:

> The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur . . . [b]y reason of having executed or procured the execution of the Bonds . . . .

(Compl., at 17.)  IFIC also established the nature of its underlying claim, alleging that it paid claims on the underlying performance bonds and that the Defendants' failed to reimburse it for those payments.  (*Id.* ¶¶ 30–32.)  Those payments are covered by the

---

[2]       The indemnification agreement contains no choice of law provision and the parties are from New Jersey and Pennsylvania.  Pennsylvania law applies to this indemnification agreement.  Federal courts sitting in diversity cases apply the choice of law rules of the state in which they sit.  *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941).  In Pennsylvania, "[i]f the parties have not agreed upon a choice of law, Pennsylvania employs a two-step process to resolve choice-of-law questions."  *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 487 (E.D. Pa. 2009) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)).  First, the Court must determine whether there is any conflict between Pennsylvania and New Jersey law.  If both laws would lead to the same result, there is no conflict, and Pennsylvania law applies.  *Id.* at 487.

Under New Jersey law, "[i]ndemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally."  *Englert v. The Home Depot*, 911 A.2d 72, 77 (N.J. Super. Ct. 2006).  To state a claim for breach of contract in New Jersey, a plaintiff must show that (1) the parties entered into a valid contract; (2) the defendant failed to perform his duties under the contract; and (3) the plaintiff sustained damages as a result of the breach.  *Lincoln Harbor Enters., LLC v. M.Y. Diplomat,* No. CIV 08–0526, 2008 WL 5046787, at *5 (D.N.J. Nov. 21, 2008) (citing *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)).  While the elements of the cause of action differ, applying New Jersey law would yield the same substantive result as would applying Pennsylvania law.  The laws are therefore not in conflict, and the Court will apply Pennsylvania's.

language of the indemnification agreement.  Finally, in one instance IFIC settled an

action against the bonds rather than paying a judgment, and that settlement was valid and

reasonable.  On September 17, 2015 IFIC entered into a settlement agreement with

Limerick and Pottsgrove Townships, among other parties.  (Settlement Agreement, ECF

No. 32-7.)  The agreement settled Limerick Township's claim against IFIC arising from

the performance bond IFIC had issued the township.  (*Id.*)  The parties settled the claim

on the bond—originally issued in the amount of $3,527,064.33—for $120,000.  (*Id.* at 2.)

Considering the potential value of the claim against the performance bond, IFIC's

settlement with Limerick Township appears reasonable.  *See McClure*, 585 A.2d at 22.

## B.

Rule 55(b)(2) authorizes a district court to enter a default judgment against a properly

served defendant who fails to file a timely responsive pleading.[3]  *See Anchorage Assocs. v. V.I.

Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  Three factors control whether a default

judgment should be granted: (1) prejudice to the plaintiff if default judgment is denied; (2)

whether the defendants appear to have a litigable defense; and (3) whether defendants' delay is

due to culpable conduct.  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

The *Chamberlain* factors support granting the motion for default judgment.  First,

denying the motion will prejudice IFIC. "Considerable delays," especially those that might

"stretch on indefinitely," are sufficient to show prejudice to the plaintiff.  *Grove v. Rizzi 1857

S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013) ("There also may be

sufficient prejudice where lack of a judgment might extinguish a plaintiff's ability to recover

from a defendant (internal quotation and citation omitted)); *see also State Farm Fire & Cas. Co.*

---

[3]        IFIC personally served the summons and complaint on the Defendants.  *See* (ECF Nos. 3, 4, 5).

*v. Hunt*, No. 14-06673, 2015 WL 1974772, at \*4 (E.D. Pa. May 4, 2015) (holding that plaintiff "is prejudiced by [defendants'] ignoring this litigation, protracting the dispute between the parties and effectively foreclosing [plaintiff] from relief for the foreseeable future"); *DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, \*2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default").  The Defendants have failed to answer or otherwise appear in this case, leaving IFIC with no other recourse than to file for default judgment.  *See, e.g.*, *Moody Nat'l FFI Meadowlands Mt, LLC v. Gager*, No. 12-2124, 2013 WL 622128, at \*10 (D.N.J. Jan 24, 2013).

The second *Chamberlain* factor—whether the Defendants appear to have a litigable defense—also favors entering a default judgment.  "[T]he court may presume that an absent defendant who has failed to answer has no meritorious defense, because it is not the court's responsibility to research the law and construct the parties' arguments for them."  *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271–72 (E.D. Pa. 2014) (internal citations and quotations omitted); *see also Mancuso v. Tyler Dane*, No. 08-5311, 2012 WL 1536210, at \*3 (D.N.J. May 1, 2012) (reaching the same conclusion).  In this case, the Defendants failed to answer or otherwise appear; the Court will not construct arguments on their behalf.

Finally, the Defendants' failure to "engage[ ] in the litigation process" constitutes "culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative."  *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

**III.**

After granting the motion for default judgment, the Court must calculate the appropriate damages. *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). "Courts may rely upon detailed affidavits submitted by the parties instead of holding an evidentiary hearing to determine damages on default judgment." *J & J Sports Prods., Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014) (citation omitted); *see also Rainey v. Diamond State Port Corp.*, 354 F. App'x 722 (3d Cir. 2009) (reviewing district court's decision not to hold a damages hearing at default judgment stage for abuse of discretion).

IFIC seeks total damages of $230,860.43, (Pl.'s Mot. to Enter Default Judgment, ECF No. 32; Maloney Affidavit, ECF No. 32-1), and its attached affidavit sufficiently establishes that amount as the proper calculation of damages, costs and attorneys' fees, *see generally* (Maloney Affidavit; "IFIC Claims Extract," ECF No. 32-8). IFIC attached the affidavit of Senior Claims Representative Kathleen Maloney to its motion for default judgment. The affidavit details three separate sources of damages the Defendants owe IFIC. First, Maloney averred that in accordance with a September 17, 2015 settlement agreement between IFIC and Lower Pottsgrove and Limerick Townships on the performance bonds, IFIC paid Limerick Township $120,000. (*Id.* ¶¶ 15–16.) Maloney attached the settlement agreement requiring the $120,000 payment as further evidence of these damages. *See* (Settlement Agreement, ECF No. 32-7, at 3). Second, Maloney averred that IFIC has paid or committed to pay $107,350.48 "for expenses, attorneys' fees, costs and related disbursements" in connection with claims asserted against the performance bonds and the associated litigation. (*Id.* ¶ 17.) As additional evidence of these damages, Maloney included a copy of IFIC's "claim extract"—line-item documentation of payments IFIC has made for claims against the performance bonds. (Claim Extract, ECF No.

32-8.)  Third, Maloney averred that the Defendants owe outstanding premium payments of

$3,510 to IFIC under the performance bonds.  (*Id.* ¶ 18.)  Collectively, these three sources of

debts amount to $230,860.43.  *See* (*id.* ¶ 16–19).  IFIC has provided sufficient documentary

support to calculate their damages at IFIC $230,860.43.

An appropriate order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.